■ AVIATION CONSTRUCTORS, INC., Respondent, v BALDASSANO ARCHITECTURAL GROUP, P.C., Appellant, et al., Defendants. [870 NYS2d 451]—

The plaintiff Aviation Constructors, Inc. (hereinafter AC) retained the defendant Baldassano Architectural Group, P.C. (hereinafter the defendant) to draft architectural drawings for a project to expand the Southwest Airlines terminal at the Mac-Arthur Airport in the Town of Islip.

The project commenced without the execution of formal contracts. Southwest Airlines would not enter into a formal contract with AC until it received approval from the Town of Islip and AC would not enter into a contract with the defendant until it received a formal contract from Southwest Airlines, which did not occur until August 2002.

AC and the defendant executed a letter agreement dated February 29, 2000 which stated "[u]ntil such time that negotiations of fees are completed, [the defendant] will provide services on an hourly basis and will bill monthly in accordance with the hourly rates previously submitted."

Thereafter the defendant sent AC proposals for a fixed fee of 4.5% of the final construction costs, amounting to $1,262,250 based upon estimated construction costs of $27,500,000. These proposals were not countersigned by AC. By letter dated May 30, 2000, from AC to the defendant, AC clarified that the hourly rate was based upon a "Direct Personnel Expense," defined as

annual salary excluding mandatory and customary benefits, divided by 2,080.

AC paid various invoices provided by the defendant in the stipulated amount of $1,190,058.05. When the invoices were audited, AC claimed it had been overcharged on the ground that the hourly rate deviated from the direct personnel expense, and the defendant asserted a lien on the drawings it had prepared.

AC commenced this action against, among others, the defendant, inter alia, to recover damages for breach of contract based on the alleged overbillings, and to compel the defendant to turn over the plans to AC. The defendant counterclaimed, among other things, to recover fees based upon an alleged agreement for a fixed fee of 4.5% of final construction costs, and based upon an account stated. After a nonjury trial on the defendant's counterclaims, the trial court found that the defendant failed to establish that there was a contract between AC and the defendant to pay the defendant a fixed fee and that the defendant failed to establish entitlement to relief based upon an account stated. The defendant was awarded $98,876.86 based upon AC's direct personnel expense formula.

"Where, as here, a nonjury trial is involved, this Court's power to review the evidence is as broad as that of the trial court, bearing in mind that due regard must be given to the trial court, which was in a position to assess the evidence and the credibility of the witnesses" (*Totonelly v Enos*, 49 AD3d 710, 711 [2008]). Exercising that power, we uphold that determination of the trial court.

The defendant failed to meet its burden of establishing that there was a meeting of the minds with respect to its proposal for a fixed fee for its services (*see Wells Fargo Funding, Inc. v Lend-Mor Mtge. Bankers Corp.*, 39 AD3d 628 [2007]). Moreover, AC, in its letter dated May 30, 2000, reiterated that the hourly rate was based upon a "Direct Personnel Expense" previously defined. An employee of the defendant acknowledged at the trial that there were oral objections to the invoices and the parties agreed that the defendant would refund any amounts overbilled and paid. Since AC objected and reserved its rights to a refund of any amount overbilled, there was no account stated (*see Tridee Assoc., Inc. v Board of Educ. of City of N.Y.*, 22 AD3d 833, 834 [2005]; *Erdman Anthony & Assoc. v Barkstrom*, 298 AD2d 981, 982 [2002]).

The defendant's remaining contentions are without merit. Fisher, J.P., Florio, Carni and Chambers, JJ., concur.